Justice Thomas
delivered the opinion of the Court.
The Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U. S. C. § 1602 et seq., governs federal courts’ jurisdiction in lawsuits against foreign sovereigns. Today, we must decide whether the FSIA provides immunity to a foreign sovereign from a lawsuit to declare the validity of tax liens on property held by the sovereign for the purpose of housing its employees. We hold that the FSIA does not immunize a foreign sovereign from such a suit.
I
The Permanent Mission of India to the United Nations is located in a 26-floor building in New York City that is owned by the Government of India. Several floors are used for diplomatic offices, but approximately 20 floors contain residential units for diplomatic employees of the mission and their families. The employees — all of whom are below the rank of Head of Mission or Ambassador — are Indian citizens who receive housing from the mission rent free.
Similarly, the Ministry for Foreign Affairs of the People’s Republic of Mongolia is housed in a six-story building in New York City that is owned by the Mongolian Government. Like the Permanent Mission of India, certain floors of the Ministry Building include residences for lower level employees of the Ministry and their families.
Under New York law, real property owned by a foreign government is exempt from taxation if it is “used exclusively” for diplomatic offices or for the quarters of a diplomat *196 “with the rank of ambassador or minister plenipotentiary” to the United Nations. N. Y. Real Prop: Tax Law Ann. § 418 (West 2000). But “[i]f a portion only of any lot or building ... is used exclusively for the purposes herein described, then such portion only shall be exempt and the remainder shall be subject to taxation ....” Ibid.
For several years, the city of New York (City) has levied property taxes against petitioners for the portions of their buildings used to house lower level employees. Petitioners, however, refused to pay the taxes. By operation of New York law, the unpaid taxes eventually converted into tax liens held by the City against the two properties. As of February 1, 2003, the Indian Mission owed about $16.4 million in unpaid property taxes and interest, and the Mongolian Ministry owed about $2.1 million.
On April 2, 2003, the City filed complaints in state court seeking declaratory judgments to establish the validity of the tax liens.[1] Petitioners removed their cases to federal court, pursuant to 28 U. S. C. § 1441(d), which provides for removal by a foreign state or its instrumentality. Once there, petitioners argued that they were immune from the suits under the FSIA’s general rule of immunity for foreign governments. § 1604. The District Court disagreed, relying on the FSIA’s “immovable property” exception, which *197 provides that a foreign state shall not be immune from jurisdiction in any case in which “rights in immovable property situated in the United States are in issue.” § 1605(a)(4).
Reviewing the District Court’s decision under the collateral order doctrine, a unanimous panel of the Court of Appeals for the Second Circuit affirmed. 446 F. 3d 365 (2006). The Court of Appeals held that the text and purpose of the FSIA’s immovable property exception confirmed that petitioners’ personal property tax obligations, involved “rights in immovable property.” It therefore held that the District Court had jurisdiction to consider the City’s suits. We granted certiorari, 549 U. S. 1177 (2007), and now affirm.
II
“[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court.” Argentine Republic v. Amerada Hess Shipping Corp., 488 U. S. 428, 439 (1989). Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies. § 1604; Saudi Arabia v. Nelson, 507 U. S. 349, 355 (1993). At issue here is the scope of the exception where “rights in immovable property situated in the United States are in issue.” § 1605(a)(4). Petitioners contend that the language “rights in immovable property” limits the reach of the exception to actions contesting ownership or possession. The City argues that the exception encompasses additional rights in immovable property, including tax liens. Each party claims international practice at the time of the FSIA’s adoption supports its view. We agree with the City.
A
We begin, as always, with the text of the statute. Limtiaco v. Camacho, 549 U. S. 483, 488 (2007). The FSIA provides: “A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case ... in which . . . rights in immovable property situated in the *198 United States are in issue.” 28 U. S. C. § 1605(a)(4). Contrary to petitioners’ position, § 1605(a)(4) does not expressly limit itself to cases in which the specific right at issue is title, ownership, or possession. Neither does it specifically exclude cases in which the validity of a lien is at issue. Rather, the exception focuses more broadly on “rights in” property. Accordingly, we must determine whether an action seeking a declaration of the validity of a tax lien places “rights in immovable property ... in issue.”
At the time of the FSIA’s adoption in 1976, a “lien” was defined as “[a] charge or security or incumbrance upon property.” Black’s Law Dictionary 1072 (4th ed. 1951). “Incumbrance,” in turn, was defined as “[a]ny right to, or interest in, land which may subsist in another to the diminution of its value . . . .” Id., at 908; see also id., at 941 (8th ed. 2004) (defining “lien” as a “legal right or interest that a creditor has in another’s property”). New York law defines “tax lien” in accordance with these general definitions. See N. Y. Real Prop. Tax Law Ann. § 102(21) (West Supp. 2007) (“ Tax lien’ means an unpaid tax . . . which is an encumbrance of real property . . . ”). This Court, interpreting the Bankruptcy Code, has also recognized that a lienholder has a property interest, albeit a “nonpossessory” interest. United States v. Security Industrial Bank, 459 U. S. 70, 76 (1982).
The practical effects of a lien bear out these definitions of liens as interests in property. A lien on real property runs with the land and is enforceable against subsequent purchasers. See 5 Restatement of Property §540 (1944). As such, “a lien has an immediate adverse effect upon the amount which [could be] receive[d] on a sale, . . . constituting] a direct interference with the property . . . .” Republic of Argentina v. New York, 25 N. Y. 2d 252, 262, 250 N. E. 2d 698, 702 (1969). A tax lien thus inhibits one of the quintessential rights of property ownership — the right to convey. It is *199 therefore plain that a suit to establish the validity of a lien implicates “rights in immovable property.”
B
Our reading of the text is supported by two well-recognized and related purposes of the FSIA: adoption of the restrictive view of sovereign immunity and codification of international law at the time of the FSIA’s enactment. Until the middle of the last century, the United States followed “the classical or virtually absolute theory of sovereign immunity,” under which “a sovereign cannot, without his consent, be made a respondent in the courts of another sovereign.” Letter from Jack B. Tate, Acting Legal Adviser, U. S. Dept, of State, to Acting U. S. Attorney General Phillip B. Perlman (May 19, 1952) (Tate Letter), reprinted in 26 Dept, of State Bull. 984 (1952), and in Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U. S. 682, 711, 712 (1976) (Appendix 2 to opinion of the Court). The Tate Letter announced the United States’ decision to join the majority of other countries by adopting the “restrictive theory” of sovereign immunity, under which “the immunity of the sovereign is recognized with regard to sovereign or public acts (jure imperii) of a state, but not with respect to private acts (jure gestionis).” Id., at 711. In enacting the FSIA, Congress intended to codify the restrictive theory’s limitation of immunity to sovereign acts. Republic of Argentina v. Weltover, Inc., 504 U. S. 607, 612 (1992); Asociacion de Reclamantes v. United Mexican States, 735 F. 2d 1517, 1520 (CADC 1984) (Scalia, J.).
As a threshold matter, property ownership is not an inherently sovereign function. See Schooner Exchange v. McFaddon, 7 Cranch 116, 145 (1812) (“A prince, by acquiring private property in a foreign country, may possibly be considered as subjecting that property to the territorial jurisdiction; he may be considered as so far laying down the *200 prince, and assuming the character of a private individual”). In addition, the FSIA was also meant “to codify ... the pre-existing real property exception to sovereign immunity recognized by international practice.” Reclamantes, supra, at 1521 (Scalia, J.). Therefore, it is useful to note that international practice at the time of the FSIA’s enactment also supports the City’s view that these sovereigns are not immune. The most recent restatement of foreign relations law at the time of the FSIA’s enactment states that a foreign sovereign’s immunity does not extend to “an action to obtain possession of or establish a property interest in immovable property located in the territory of the state exercising jurisdiction.” Restatement (Second) of Foreign Relations Law of the United States § 68(b), p. 205 (1965). As stated above, because an action seeking the declaration of the validity of a tax lien on property is a suit to establish an interest in such property, such an action would be allowed under this rule.
Petitioners respond to this conclusion by citing the second sentence of Comment d to §68, which states that the rule “does not preclude immunity with respect to a claim arising out of a foreign state’s ownership or possession of immovable property but not contesting such ownership or the right to possession.” Id., at 207. According to petitioners, that sentence limits the exception to cases contesting ownership or possession. When read in context, however, the comment supports the City. Petitioners ignore the first sentence of the comment, which reemphasizes that immunity does not extend to cases involving the possession of or “interest in” the property. Ibid. And the illustrations following the comment make clear that it refers only to claims incidental to property ownership, such as actions involving an “injury suffered in a fall” on the property, for which immunity would apply. Id., at 208. By contrast, for an eminent-domain proceeding, the foreign sovereign could not claim immunity. *201 Ibid. Like the eminent-domain proceeding, the City’s lawsuits here directly implicate rights in property.
In addition, both parties rely on various international agreements, primarily the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U. S. T. 3227, T. I. A. S. No. 7502, to identify pre-FSIA international practice. Petitioners point to the Vienna Convention’s analogous withholding of immunity for “a real action relating to private immovable property situated in the territory of the receiving State, unless [the diplomatic agent] holds it on behalf of the sending State for the purposes of the mission.” Id., at 3240, Art. 31(l)(a). Petitioners contend that this language indicates they are entitled to immunity for two reasons. First, petitioners argue that “‘real actionfs]’” do not include actions for performance of obligations “ ‘deriving from ownership or possession of immovable property.’” Brief for Petitioners 28 (quoting E. Denza, Diplomatic Law: A Commentary on the Vienna Convention on Diplomatic Relations 238 (2d ed. 1998); emphasis deleted). Second, petitioners assert that the property here is held “ ‘on behalf of the sending State for purposes of the Mission.’ ” Brief for Petitioners 28.
But as the City shows, it is far from apparent that the term “real action” — a term derived from the civil law — is as limited as petitioners suggest. See Chateau Lafayette Apartments, Inc. v. Meadow Brook Nat. Bank, 416 F. 2d 301, 304, n. 7 (CA5 1969). Moreover, the exception for property held “on behalf of the sending State” concerns only the case — not at issue here — where local law requires an agent to hold in his own name property used for the purposes of a mission. 1957 Y. B. Int’l L. Comm’n 94-95 (402d Meeting, May 22, 1957); see also Deputy Registrar Case, 94 I. L. R. 308, 313 (D. Ct. The Hague 1980). Other tribunals construing Article 31 have also held that it does not extend immunity to staff housing. See id., at 312; cf. Intpro Properties (U. K.) Ltd. v. Sauvel, [1983] 1 Q. B. 1019, 1032-1033.
*202 In sum, the Vienna Convention does not unambiguously support either party on the jurisdictional question.[2] In any event, nothing in the Vienna Convention deters us from our interpretation of the FSIA. Under the language of the FSIA’s exception for immovable property, petitioners are not immune from the City’s suits.
Ill
Because the statutory text and the acknowledged purposes of the FSIA make it clear that a suit to establish the validity of a tax lien places “rights in immovable property ... in issue,” we affirm the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

It is so ordered.

 The City concedes that even if a court of competent jurisdiction declares the liens valid, petitioners are immune from foreclosure proceedings. See Brief for Respondent 40 (noting that there is no FSIA immunity exception for enforcement actions). The City claims, however, that the declarations of validity are necessary for three reasons. First, once a court has declared property tax liens valid, foreign sovereigns traditionally concede and pay. Second, if the foreign sovereign fails to pay in the face of a valid court judgment, that country’s foreign aid may be reduced by the United States by 110% of the outstanding debt. See Foreign Operations, Export Financing, and Related Programs Appropriations Act, 2006, § 543(a), 119 Stat. 2214; Consolidated Appropriations Act of 2005, § 543(a), 118 Stat. 3011. Third, the liens would be enforceable against subsequent purchasers. 5 Restatement of Property § 540 (1944).

 The City offers several other arguments against immunity based on the Vienna Convention, but those arguments ultimately go to the merits of the case, i. e., whether petitioners are actually responsible for paying the taxes. Because the only question before us is one of jurisdiction, and because the text and historical context of the FSIA demonstrate that petitioners are not immune from the City’s suits, we leave these merits-related arguments to the lower courts.