# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 21, 2010       Decided February 4, 2011

No. 10-7029

CONSOLIDATED RAIL CORPORATION,
APPELLANT

v.

JAMES T. RAY, FOR THE ESTATE OF HAROLD F. BOYD,
DECEASED,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01148)

*Laurence Z. Shiekman* argued the cause and filed the briefs for appellant.

*David B. Rodes* argued the cause and filed the brief for appellee. *Betsy E. Lehrfeld* entered an appearance.

Before: GINSBURG, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: The Congress enacted the Regional Rail Reorganization Act of 1973, Pub. L. No. 93-236, 87 Stat. 985 (1974) (codified as amended at 45 U.S.C. §§ 701–797m) [hereinafter the Rail Act], in order to limit the harm caused by the bankruptcy of several major railroads. The Act created the Consolidated Rail Corporation, a/k/a Conrail, a private, for-profit enterprise, to acquire "free and clear of any liens or encumbrances" the operating assets of the bankrupt railroads and to continue rail service in their stead. The estate of a former employee of one of the failed roads sought to hold Conrail liable in tort for damages allegedly arising out of that employee's exposure to asbestos, which had occurred before Conrail was created. Conrail asked the district court for a declaratory judgment that it could not be held liable for such a claim. Because the tort claim at issue is neither a "lien" nor an "encumbrance," and personal injury claims against the railroad were not before the bankruptcy court in its reorganization proceeding, we affirm the judgment of the district court in favor of the employee.

## I.   Background

"A rail transportation crisis seriously threatening the national welfare was precipitated when eight major railroads in the northeast and midwest region of the country entered reorganization proceedings under § 77 of the [now superseded] Bankruptcy Act." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 108 (1974). In 1973 the Congress passed the Rail Act to reorganize the "railroads in this region into an economically viable system capable of providing adequate and efficient rail service." 45 U.S.C. § 701(b)(2). The Act created a Special Court to "order the conveyance [to Conrail] of rail properties of railroads leased, operated, or controlled by a railroad in reorganization in the region." *Id.* §

719(b). The Special Court was to resolve disputes related to the reorganization and to convey the rail properties "free and clear of any liens or encumbrances." *Id.* § 743(b)(2).[*]

In 1976 the Special Court issued an order conveying to Conrail a majority of the rail assets of several failed railroads, including the Erie Lackawanna Railway Company, which in 1972 had initiated a conventional reorganization proceeding under § 77 of the Bankruptcy Act then in effect. Upon the conveyance of its rail assets to Conrail, the Erie discontinued operations; it later emerged from the § 77 proceedings solely for the purpose of liquidating any remaining non-rail assets. *In re Erie Lackawanna Ry. Co.*, 803 F.2d 881, 882–83 (6th Cir. 1986).

The late Harold Boyd worked for the Erie from 1942 until it ceased operating in 1976, at which point he began working for Conrail; he retired in 1978. *Consol. Rail Corp. v. Ray*, 693 F. Supp. 2d 39, 42 (D.D.C. 2010). James Ray, the executor of Boyd's estate, filed suit against Conrail and others in an Ohio state court, seeking damages under the Federal Employers' Liability Act for injuries allegedly arising from his exposure to asbestos while on the job. *Id.* Conrail then filed the present action in the district court, seeking a declaratory judgment that the Rail Act precludes Conrail's liability for FELA claims based upon an employee's exposure to asbestos while working for a predecessor railroad. *Id.* at 42–43. That court denied Conrail's motion for summary

---

[*] The jurisdiction of the Special Court, under which this claim arises, is now vested in the U.S. District Court for the District of Columbia. 45 U.S.C. § 719(b)(2).

judgment and granted the estate's motion for judgment on the pleadings, *id.* at 53, whereupon Conrail appealed.

## II.   Analysis

This case is both factually and legally narrow.  Factually, it is limited to Boyd's exposure to asbestos during his employment by the Erie; Conrail does not seek a declaration with respect to its liability for Boyd's exposure during his employment by Conrail.   The only legal issue, which we resolve de novo, *see McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 3 (D.C. Cir. 2010) (summary judgment); *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 9 (D.C. Cir. 2009) (judgment on the pleadings), is whether the Rail Act precludes Conrail's liability for an employee's pre-conveyance exposure to asbestos, *see Ray*, 693 F. Supp. 2d at 42–43.

The Rail Act provided the assets of failed railroads were to be "conveyed [to Conrail] free and clear of any *liens* or *encumbrances*."   45 U.S.C. § 743(b)(2) (emphases added). Ray argues that, by their plain meaning, the italicized terms are limited to interests in property.   Conrail does not meaningfully engage with Ray's textual argument; it prefers to avoid the plain import of the phrase "liens or encumbrances" by emphasizing instead what the Special Court has previously identified as the intent of the Congress to give the railroad industry a "fresh start."   *See Penn Cent. Corp. v. United States*, 862 F. Supp. 437, 461-62 (Regional Rail Reorg. Ct. 1994).

As the district court here noted, the Supreme Court has already plowed this ground in *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 198

(2007), a case involving the Foreign Sovereign Immunities Act:

> At the time of FSIA's adoption in 1976, a "lien" was defined as "[a] charge or security or incumbrance upon property." BLACK'S LAW DICTIONARY 1072 (4th ed. 1951). "Incumbrance," in turn, was defined as "[a]ny right to, or interest in, land which may subsist in another to the diminution of its value...." *Id.*[] at 908.

Because the Rail Act was passed just three years before the FSIA, we see no reason to believe "liens or encumbrances" should be understood any differently there. Similarly, we note the Bankruptcy Code enacted in 1978 defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Both these definitions focus upon property-based, or in rem, claims and not upon in personam claims. Accordingly, the plain text of the Rail Act strongly supports Ray's position that the assets of failed railroads were not conveyed to Conrail "free and clear" of liability for personal injuries.

Conrail nonetheless argues imposing liability for a pre-conveyance personal injury would violate "the policy goals underlying the Rail Act," particularly that of giving Conrail a "fresh start." Ray responds Conrail has not shown that immunity from liability for such a personal injury claim is sufficiently important to the purpose of the Rail Act as to overcome what he characterizes as "the strong presumption that Congress would not eliminate the possibility of a remedy for injured railroad workers without expressly saying so." *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ("If Congress had intended to deprive injured parties of a long

available form of compensation, it surely would have expressed that intent more clearly").

The reasoning of the Special Court in *Consolidated Rail Corp. v. Reading Co.*, 654 F. Supp. 1318 (Regional Rail Reorg. Ct. 1987), is persuasive on this point. There the court considered the Northeast Rail Service Act of 1981, which added to the Rail Act a provision, 45 U.S.C. § 797h(b), requiring Conrail to pay (without necessarily assuming liability for) personal injury claims asserted by employees of a predecessor railroad during the pendency of that railroad's bankruptcy proceeding. *Reading*, 654 F. Supp. at 1321–22. Because the Congress must have known some railroad workers had suffered injuries that would not be manifest until after the reorganization proceedings had ended, the Special Court concluded the legislature's "failure to make specific provisions for these employees in the Rail Act can hardly be interpreted as a determination that they be bereft of any otherwise available remedy," to wit, a suit against Conrail. *Id.* at 1333. We agree with the Special Court. There is no reason to suppose the Congress would both provide a path to recovery for workers with a manifest injury and intend, "*sub silentio*, to foreclose any available remedy from those workers who did not (and through no fault of their own could not) file identical claims until after their former employers had been discharged in bankruptcy." *Id.*

Next, Conrail points to § 363 of the Bankruptcy Code, which authorizes a bankruptcy trustee to sell a debtor's asset "free and clear of any interest in such property." 11 U.S.C. § 363(f). As Conrail notes, many courts have interpreted "interest in such property" to include liability for an in personam tort claim even though, like "liens or encumbrances," the plain meaning of that phrase does not

compel such a broad reading. *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288–90 (3d Cir. 2003). As Ray persuasively argues, however, because § 743(b)(2) of the Rail Act uses different terms than does § 363(f) of the Bankruptcy Code, an interpretation of the latter statute does not inform our reading of the former. In any event, Conrail points to nothing to indicate the Special Court, if it did have the power to quash in personam claims, exercised that power in conveying the Erie's assets to Conrail.

Conrail also argues that because, at the time of their conveyance, it valued the Erie's assets with the understanding that the Erie would be responsible for personal injury claims, allowing such claims against Conrail would mean it had overpaid for the assets. As the district court noted, however, the parties presumably were aware of this risk and "'the valuation ... would have taken tort claims brought under FELA into account.'" *Ray*, 693 F. Supp. 2d at 49 n.13 (quoting *Penn Cent.*, 862 F. Supp. at 464).

Finally, Conrail argues Ray's FELA claim was subject to the control of the bankruptcy court in the Erie reorganization proceeding under § 77 of the Bankruptcy Act, which was ongoing at the time of the conveyance order, and therefore was never among the liabilities the Special Court could have conveyed to Conrail. This argument is unpersuasive because § 797h(b) and former § 774(g) of the Rail Act, both of which specifically provided for Conrail to pay personal injury claims brought by employees of predecessor railroads, 45 U.S.C. § 797h(b); *id.* § 774(g) (repealed 1981), would have been superfluous if such claims were subsumed by the § 77 proceeding. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005) (quoting *United States v. Menasche*, 348 U.S. 528,

538–39 (1955)) ("we must 'give effect, if possible, to every clause and word of a statute'").

Having reached the conclusion that personal injury claims were not before the bankruptcy court in the Erie's § 77 proceeding, we have no occasion to decide whether it would have been appropriate for that court to have discharged Ray's FELA claim. For the same reason, we note, the district court went further than necessary in concluding Ray's claim was not discharged; that conclusion was not necessary to the court's holding.[*]

### III. Conclusion

For the foregoing reasons, we hold the Rail Act does not preclude Conrail's liability for an employee's pre-conveyance exposure to asbestos. Accordingly, the Ohio court may proceed to evaluate the merits of Ray's claim and the judgment of the district court is

*Affirmed.*

---

[*] Similarly, because Ray's claim is not part of the § 77 proceeding, there is no merit to Conrail's argument that permitting Ray to assert his claim would "grant a priority to [Ray] in preference over the claims of other preconveyance creditors, in contravention of fundamental reorganization principles." Neither of the cases Conrail cites in support of this argument involves a conveyance pursuant to the Rail Act.