**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 15-4383**

───────────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

BRYAN SERAFINI,

        Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Robert G. Doumar, Senior District Judge. (4:14-cr-00062-RGD-DEM-1)

───────────────

Argued: May 12, 2016             Decided: June 10, 2016

───────────────

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

───────────────

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Shedd joined.

───────────────

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Kevin Patrick Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Acting Federal Public Defender, Keith Loren Kimball, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, Eric M. Hurt, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

WILKINSON, Circuit Judge:

Appellant Brian Serafini pleaded guilty to one count of communicating a false distress message to the United States Coast Guard, in violation of 14 U.S.C. § 88(c). He was sentenced to fourteen months imprisonment and required to pay restitution for the costs incurred by the Coast Guard in responding to the specious communication. His sole argument on appeal is that the district court lacked the statutory authority to issue a restitution order. For the reasons that follow, we reject Serafini's claim and affirm the judgment of the district court.

I.

A.

The facts giving rise to this case are not in dispute. On May 11, 2014, Newport News Police Department and Virginia Marine Resources Commission officers responded to a report that an unauthorized boat had drifted into a restricted marine area at the Newport News Shipbuilding Company ("the shipyard"). J.A. 39. When they arrived at the shipyard, the officers discovered Brian Serafini intoxicated in a twenty-four foot Shamrock motor vessel. Id.

The officers questioned Serafini about how the vessel came to be in the restricted area of the shipyard. He explained that he had provided assistance to a man who was casting off the Shamrock from a pier located along the Pagan River. Serafini

2

told the officers that once the boat left the pier he could not safely return to shore and thus remained onboard. As they exited the mouth of the river, the two men purportedly started fighting and eventually Serafini threw the other man overboard. Upon hearing Serafini's "very detailed" version of events, the Coast Guard and other local agencies immediately set out to find the person Serafini allegedly tossed into the water. Id. at 39-40.

During the search, law enforcement determined that the Shamrock motor vessel had in fact been stolen. They also spoke with a witness who saw Serafini alone on the pier prior to the reported theft. Id. at 40. Police thereafter arrested Serafini for public intoxication and took him to the Newport News jail for booking. While he was in custody, Serafini disclosed that he had taken some medication that may have caused him to imagine that another man was on the boat. The search was eventually called off -- the Coast Guard could not find any evidence indicating that someone had been thrown off the Shamrock. In total, the rescue efforts cost the Coast Guard $117,913. Id. at 41.

B.

A grand jury in the Eastern District of Virginia returned a one-count indictment against Serafini charging him with knowingly and willfully communicating a false distress message, in violation of 14 U.S.C. § 88(c). J.A. 6. With the advice of

3

counsel, Serafini pleaded guilty on December 30, 2014. Id. at 38. Although Serafini and the government did not enter a formal plea agreement, the parties agreed on a stipulated "Statement of Facts," wherein Serafini admitted that his "statements were a false distress call which caused the United States Coast Guard to attempt to save lives when no help was actually needed." Id. at 40. Following a sentencing hearing on June 15, 2015, the district court sentenced Serafini to fourteen months imprisonment, to be followed by three years of supervised release. Id. at 120-23. The court also ordered Serafini to pay the Coast Guard $117,913 in restitution for the costs it incurred responding to the false distress call. Id. at 124. The district court reasoned that the award was statutorily authorized. Serafini now appeals the district court's ruling with respect to the order of restitution.

## II.

In this appeal, Serafini contends that the cost provision of Section 88(c) permits the Coast Guard to seek only civil redress against those who communicate false distress messages. We disagree. In our view, Section 88(c)(3) was designed to hold individuals "liable" in either criminal or civil proceedings for "all costs the Coast Guard incurs as a result of the individual's action." We shall first set forth Section 88(c)'s

4

remedial scheme and then proceed to address Serafini's particular arguments.

A.

At its core, 14 U.S.C. § 88(c) serves two purposes. First, Congress sought to protect the Coast Guard's limited budget by imposing punishment on those who intentionally send false distress calls. Section 88(c) reflects the view that essential resources should not be squandered at the whim of pranksters or, even worse, by those who would deliberately divert the Coast Guard's attention from their own nefarious activities. Second, and equally important, Section 88(c) reflects Congress's desire to avoid needlessly risking the lives of Coast Guard personnel, whose search and rescue operations can be highly dangerous and are too often accompanied by tragic consequences.

To that end, Section 88(c) provides:

An individual who knowingly and willfully communicates a false distress message to the Coast Guard or causes the Coast Guard to attempt to save lives and property when no help is needed is –

(1) guilty of a class D felony;
(2) subject to a civil penalty of not more than $10,000; and
(3) liable for all costs the Coast Guard incurs as a result of the individual's action.

14 U.S.C. § 88(c). Here, the parties dispute whether subsection (3) permits an order of restitution as part of a criminal sentence.

5

B.

"A restitution order that exceeds the authority of the statutory source is no less illegal than a sentence of imprisonment that exceeds the statutory maximum." United States v. Davis, 714 F.3d 809, 812 (4th Cir. 2013). We thus must examine closely the alleged authorizing provision. "We begin, as always, with the text of the statute." Permanent Mission of India to the U.N. v. City of N.Y., 551 U.S. 193, 197 (2007). The statute before us does not define the phrase "liable for all costs the Coast Guard incurs." Accordingly, we apply the "fundamental canon of statutory construction" that "words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979). "To determine a statute's plain meaning, we not only look to the language itself, but also the specific context in which that language is used, and the broader context of the statute as a whole." Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 258 (4th Cir. 2013).

Serafini asserts that, when read "in context, the phrasing 'liable for costs' connote[s] civil liability, rather than a criminal sanction." Appellant's Br. at 21. According to Serafini, "[t]he text and structure of the statute . . . make this [reading] clear." Id. at 13.

6

We fail to see why the phrase "liable for all costs the Coast Guard incurs" would authorize only civil remedies. First of all, Congress did not limit "liability" to a particular form of proceeding. Moreover, the argument for a narrow reading of Section 88(c)(3) is undermined by the language in the preceding subsection (c)(2). Section 88(c)(3) speaks broadly of liability "for all costs the Coast Guard incurs," while (c)(2) subjects violators solely to a "civil penalty." As the Supreme Court has reiterated: "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." See Russello v. United States, 464 U.S. 16, 23 (1983). Simply put, if Congress wanted to limit subsection 88(c)(3) to civil proceedings, it presumably would have done so explicitly, as it did in subsection (c)(2).

Serafini responds by urging us to draw a negative inference from the fact that Congress "could have specified, as it did with the 'civil penalty' in § 88(c)(2), that it intended the defendant to be 'criminally liable' under § 88(c)(3)." Appellant's Br. at 23. But that argument ignores a critical feature of the statute itself. Most importantly, 14 U.S.C. § 88(c) is a criminal provision; it makes "knowingly and willfully" communicating false distress messages a class D

7

felony. Thus, unlike the civil carve out specified in subsection (c)(2), Congress had no need to state in what is generally a criminal statute that subsection (c)(3) authorizes criminal liability.

Serafini also makes much of the fact that Section 88(c)(3) does not use the word "restitution." He maintains that "Congress easily could have used language that clearly called for criminal restitution orders, including, most obviously, the word 'restitution.' Or, it could have referred expressly to the [relevant] restitution statute." Id. at 23. Absent an explicit legislative authorization, the argument goes, the federal courts are without authority to award restitution in criminal cases.

We also find this argument unpersuasive. Congress had no need to use the particular word "restitution" when the statutory text made its restitutionary intent so clear. In Section 88(c)(3), Congress subjected individuals to liability "for all costs the Coast Guard incurs as a result of the individual's action." 14 U.S.C. § 88(c)(3) (emphasis added). The import of this language is not difficult to discern. "[T]he use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." Nat'l Coal. For Students with Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 290 (4th Cir. 1998). Congress's decision to use the words "liable for all costs" and omit "restitution" was thus anything but a

bar to a restitutionary order in a criminal case. Rather, by employing the broad language of Section 88(c)(3), Congress intended to include "all" the different items and varieties of expense the Coast Guard might incur "as a result of the individual's action," not to limit the forum in which it might recover them. We note that our reading of the statute is consistent with decisional law from our sister circuits. See United States v. Kumar, 750 F.3d 563, 566-68 (6th Cir. 2014) (affirming the district court's restitution order of $277,257.70 to the Coast Guard); United States v. James, 986 F.2d 441, 444 (11th Cir. 1993) (reversing the lower court's decision because it failed to award the Coast Guard "the costs of the operation from beginning to completion").

Serafini further attempts to bolster his interpretation of Section 88(c) by relying on other provisions in the criminal code. "The fact that [Congress] has [explicitly referred to restitution] in other statutes," Serafini contends, "strongly suggests that it did not intend to do so in § 88(c)(3)." Appellant's Reply Br. at 5-6 (citing 42 U.S.C. § 1383a(b); 38 U.S.C. § 6108(b); 21 U.S.C. § 853(q)).

This kind of exercise, however, leads us far afield. Our task in interpreting the meaning of Section 88(c) "begins where all such inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enterprises, Inc., 489 U.S.

235, 241 (1989). "In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" Id. (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)). We recognize, of course, that there is no strict rule against the use of other sections of the code as an aid to statutory construction. See Train v. Colorado Pub. Interest Research Grp., Inc., 426 U.S. 1, 10 (1976). Nevertheless we conclude that Section 88(c)'s language, which is by far the most relevant for our purposes, is sufficiently clear to obviate the need for transpositional interpretation.

Finally, Serafini invokes the rule of lenity. Appellant's Reply Br. at 9. He claims that because the statute does not "'plainly and unmistakably' mandate[] criminal restitution," id., the rule of lenity requires that we vacate the district court's decision to impose such liability.

To apply the rule of lenity here would mark a sharp departure from the rulings of the Supreme Court and our own. It is not the case that a provision is "'ambiguous' for purposes of lenity merely because it [is] possible to articulate a construction more narrow than that urged by the Government." Moskal v. United States, 498 U.S. 103, 108 (1990). Rather, in order to invoke the rule there must be a "grievous ambiguity or uncertainty in the language and structure of the

Act, such that even after a court has seize[d] everything from which aid can be derived, it is still left with an ambiguous statute." Chapman v. United States, 500 U.S. 453, 463 (1991); see also United States v. Kahoe, 134 F.3d 1230, 1234 (4th Cir. 1998). Given that the language and structure of Section 88(c) support the government's position, see ante at 6-9, it is no surprise that the statute's use of the phrase "liable for all costs the Coast Guard incurs" does not rise to the level of grievousness that would warrant application of the rule of lenity in this case.

In sum, the text and all reasonable inferences from it provide a clear rebuttal to Serafini's proposed construction of Section 88(c)(3). Our interpretation, to repeat, is in no way meant to suggest that the Coast Guard cannot recover the costs associated with a false distress call in a civil action. The sole question before us, however, is whether an order of restitution may issue under Section 88(c)(3) as part of a criminal sentence. We hold that it may. As described above, a primary purpose of the statute was to preserve for legitimate purposes the Coast Guard's finite budget. It would defeat that purpose to mandate that the Coast Guard expend even more resources in separate civil actions to recoup false distress call costs. See Federal Trade Commission v. Fred Meyer, Inc., 390 U.S. 341, 349 (1968) ("we cannot, in the absence of an

11

unmistakable directive, construe the Act in a manner which runs counter to the broad goals which Congress intended it to effectuate").

                                    III.

For the foregoing reasons, we affirm the judgment of the district court.

                                                    AFFIRMED