*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD L. NELSON and BEVERLY NELSON,

      Plaintiffs-Appellants,

v

CHIPPEWA OTTAWA RESOURCE AUTHORITY,
GRAND TRAVERSE BAND OF OTTAWA AND
CHIPPEWA INDIANS, BAY MILLS INDIAN
COMMUNITY, and SAULT STE. MARIE TRIBE
OF CHIPPEWA INDIANS,

      Defendants-Appellees.

UNPUBLISHED
January 25, 2024

No. 363660
Mackinac Circuit Court
LC No. 20-008508-CH

Before: FEENEY, P.J., and RICK and HOOD, JJ.

FEENEY, P.J. (*dissenting*).

I respectfully dissent.

While this case has a convoluted procedural history, I believe that the question before us at this juncture is fairly simple and easily resolvable. At this point, plaintiffs essentially argue that the trial court erred in not permitting them to pursue their quiet title action without the United States as a party defendant because there is no requirement that the federal government be joined in this action. I agree.

Actions involving real property are covered by subchapter 3.400 of the Michigan Court Rules. And specifically, MCR 3.411(H) applies here:

> **Judgment Binding Only on Parties to Action.** Except for title acquired by adverse possession, the judgment determining a claim to title, equitable title, right to possession, or other interests in lands under this rule, determines only the rights and interests of the known and unknown persons who are parties to the action, and of persons claiming through those parties by title accruing after the commencement of the action.

-1-

The same principles of statutory construction also apply to court rules and includes the principle that all words must given effect. *Fraser Trebilcock Davis & Dunlap PC v Boyce Trust 2350*, 497 Mich 265, 271; 870 NW2d 494 (2015). If a plaintiff were required in a quiet title action to include all parties that may claim an interest in the property as defendants, then there would be no need to provide that "only the rights and interests of the known" parties can be determined. That is, if all known parties had to be included as defendants in the action, there would be no need for a provision in the court rules providing that only the rights of those known parties who are defendants are determined and that provision would have no meaning. For that provision to have meaning, it must be possible that there may be known parties who are not defendants in the actions, with this provision making clear that the rights and interests of those unnamed parties are not determined.

Indeed, this rule is discussed to some extent in *Richards v Tibaldi*, 272 Mich App 522, 533; 726 NW2d 770 (2006), wherein the Court states:

> In the case before us, defendants were not "parties to the [previous] action...." MCR 3.411(H). Accordingly, that portion of MCR 3.411(H) referring to "parties" does not provide a basis to find the judgment in the prior action binding on defendants. The plain language of MCR 3.411 regarding "parties" does not contemplate persons who could have been made or become parties. MCR 3.411(H) does indicate, however, that the judgment also binds persons claiming through parties "by title accruing after the commencement of the action." Defendants claimed title by way of the deed from KDC, a party in the previous action, but the title claimed by defendants accrued before the commencement of the prior suit, since the quitclaim deed from KDC to defendants was executed on April 20, 2004, and the action was commenced on June 18, 2004.

> We conclude that plaintiff's res judicata argument fails because, although it is arguable that the elements of res judicata in general are satisfied, application of MCR 3.411(H) does not allow for a conclusion that the prior judgment determined defendants' rights to the property where defendants were not parties in the earlier litigation and their asserted title did not accrue after commencement of that action.

Like the case before us, *Richards* involved competing quit claim deeds. The deeds were executed by James Keyton in the name of Keyton's Development Corporation (KDC). The deed to the plaintiff was not immediately recorded. Thereafter, the property was again conveyed by quit claim deed, this time to the defendants. Between the time that the deed to the defendants was executed and the deed was recorded (six months later), the plaintiff had filed a quiet title action against KDC and the Keytons. This resulted in a judgment quieting title in favor of the plaintiff. The plaintiff then filed a quiet title action against the defendants. *Richards,* 272 Mich App at 525-527. This Court ultimately concluded, citing MCR 3.411(H), that the earlier judgment, was not binding on the defendants.[1]

---

[1] The Court did ultimately rule in the defendants' favor, quieting title in the defendants, but not because the plaintiff's prior action was invalid for failing to join the defendants. Rather, the Court

Next, it is necessary to look at the joinder rule. MCR 2.205 provides for the necessary joinder of parties and states in pertinent part as follows:

> **(A) Necessary Joinder.** Subject to the provisions of subrule (B) and MCR 3.501, persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests.

> **(B) Effect of Failure to Join.** When persons described in subrule (A) have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action, and may prescribe the time and order of pleading. *If jurisdiction over those persons can be acquired only by their consent or voluntary appearance, the court may proceed with the action and grant appropriate relief to persons who are parties to prevent a failure of justice.* [Emphasis added.]

Subrule (A) would suggest that the United States needed to be a party in order to grant complete relief.[2] But, turning to subrule (B), because the United States can only be joined if it waives sovereign immunity, the second sentence would apply and allow the trial court to proceed and grant relief in favor of plaintiff against the defendants who are before the court even without the party who refuses to give consent or voluntarily appear.

In sum, in looking at these court rules, it is evident to me that the trial court had the authority to proceed with this case and without the federal government as a party defendant, and resolve the relative rights and interests of the parties before the court. If at some point in the future the United States wishes to claim an interest in the land, that issue may be addressed at that future time.

The other issue that needs to be addressed is whether, even in the absence of the United States as a defendant, do the defendants before us enjoy sovereign immunity as duly recognized Indian tribes. And that question leads to a discussion of the United State Supreme Court's opinions in *Upper Skagit Indian Tribe v Lundgren*, ___ US ___, ___; 138 S Ct 1649, 1655; 200 L Ed 2d 931 (2018), and the immovable-property exception to sovereign immunity discussed therein.

In *Lundgren*, Chief Justice Roberts (joined by Justice Kennedy) was troubled by the Court's lack of ability to resolve the dispute between the parties regarding property ownership of certain real property:

---

determined on the merits that the defendants' title was superior because the plaintiff's quit claim deed was executed by KDC as the grantor at a time that KDC did not have title to the property, with the Keatons holding title and only subsequently conveyed title to KDC. 272 Mich App at 540-541.

[2] It is not clear that that is the case because it was conceded at oral argument in this appeal that the land at issue had not been placed in trust with the United States. If that is the case, then there is no basis for the United States to be deemed a necessary party.

What precisely is someone in the Lundgrens' position supposed to do? There should be a means of resolving a mundane dispute over property ownership, even when one of the parties to the dispute—involving non-trust, non-reservation land— is an Indian tribe. The correct answer cannot be that the tribe always wins no matter what; otherwise a tribe could wield sovereign immunity as a sword and seize property with impunity, even without a colorable claim of right.

The Tribe suggests that the proper mode of redress is for the Lundgrens— who purchased their property long before the Tribe came into the picture—to negotiate with the Tribe. Although the parties got off on the wrong foot here, the Tribe insists that negotiations would run more smoothly if the Lundgrens "understood [its] immunity from suit." Tr. of Oral Arg. 60. In other words, once the Court makes clear that the Lundgrens ultimately have no recourse, the parties can begin working toward a sensible settlement. That, in my mind at least, is not a meaningful remedy.

The Solicitor General proposes a different out-of-court solution. Taking up this Court's passing comment that a disappointed litigant may continue to assert his title, see *Block v North Dakota ex rel Board of Univ and School Lands,* 461 US 273, 291–292; 103 S Ct 1811; 75 L Ed 2d 840 (1983), the Solicitor General more pointedly suggests that the Lundgrens should steer into the conflict: Go onto the disputed property and chop down some trees, build a shed, or otherwise attempt to "induce [the Tribe] to file a quiet-title action." Brief for United States as Amicus Curiae 23–24. Such brazen tactics may well have the desired effect of causing the Tribe to waive its sovereign immunity. But I am skeptical that the law requires private individuals—who, again, had no prior dealings with the Tribe—to pick a fight in order to vindicate their interests.

The consequences of the Court's decision today thus seem intolerable, unless there is another means of resolving property disputes of this sort. Such a possibility was discussed in the Solicitor General's brief, the Lundgrens' brief, and the Tribe's reply brief, and extensively explored at oral argument—the exception to sovereign immunity for actions to determine rights in immovable property. After all, "property ownership is not an inherently sovereign function." *Permanent Mission of India to United Nations v City of New York*, 551 US 193, 199; 127 S Ct 2352; 168 L Ed 2d 85 (2007). Since the 18th century, it has been a settled principle of international law that a foreign state holding real property outside its territory is treated just like a private individual. *Schooner Exchange v McFaddon*, 7 Cranch 116, 145; 3 L Ed 287 (1812). The same rule applies as a limitation on the sovereign immunity of States claiming an interest in land located within other States. See *Georgia v Chattanooga*, 264 US 472, 480–482; 44 S Ct 369; 68 L Ed 796 (1924). The only question, as the Solicitor General concedes, Brief for United States as Amicus Curiae 25, is whether different principles afford Indian tribes a broader immunity from actions involving off-reservation land.

I do not object to the Court's determination to forgo consideration of the immovable-property rule at this time. But if it turns out that the rule does not extend

to tribal assertions of rights in non-trust, non-reservation property, the applicability of sovereign immunity in such circumstances would, in my view, need to be addressed in a future case. See *Michigan v Bay Mills Indian Community*, 572 US ——, ——, n. 8; 134 S Ct 2024, 2036 n. 8; 188 L Ed 2d 1071 (2014) (reserving the question whether sovereign immunity would apply if a "plaintiff who has not chosen to deal with a tribe[ ] has no alternative way to obtain relief for off-reservation commercial conduct"). At the very least, I hope the Lundgrens would carefully examine the full range of legal options for resolving this title dispute with their neighbors, before crossing onto the disputed land and firing up their chainsaws. [___ US at ___; 138 S Ct at 1655-1656 (Opinion of Roberts, C.J.).]

In his dissent, Justice Thomas, joined by Justice Alito, provides an extensive discussion of the immovable-property exception to sovereign immunity and, unlike the majority, would resolve the question whether it applies to Indian tribes and concludes that it does:

We granted certiorari to decide whether "a court's exercise of in rem jurisdiction overcome[s] the jurisdictional bar of tribal sovereign immunity." Pet. for Cert. i; 583 US ——, 138 S Ct 543, 199 L Ed 2d 423 (2017). State and federal courts are divided on that question, but the Court does not give them an answer. Instead, it holds only that *County of Yakima v Confederated Tribes and Bands of Yakima Nation*, 502 US 251, 112 S Ct 683, 116 L Ed 2d 687 (1992), "resolved nothing about the law of [tribal] sovereign immunity." *Ante* at 1653. Unfortunately, neither does the decision today—except to say that courts cannot rely on County of Yakima. As a result, the disagreement that led us to take this case will persist.

The Court easily could have resolved that disagreement by addressing respondents' alternative ground for affirmance. Sharline and Ray Lundgren— whose family has maintained the land in question for more than 70 years—ask us to affirm based on the "immovable property" exception to sovereign immunity. That exception is settled, longstanding, and obviously applies to tribal immunity— as it does to every other type of sovereign immunity that has ever been recognized. Although the Lundgrens did not raise this argument below, we have the discretion to reach it. I would have done so. The immovable-property exception was extensively briefed and argued, and its application here is straightforward. Addressing the exception now would have ensured that property owners like the Lundgrens can protect their rights and that States like Washington can protect their sovereignty. Because the Court unnecessarily chooses to leave them in limbo, I respectfully dissent. [___ US at ___; 138 S Ct at 1656 (Thomas, J, dissenting).]

It is important to note that the majority, while not necessarily disagreeing that the immovable-property exception applies to an Indian tribe's sovereign immunity, it concluded that it was an issue best resolved in the first instance by the lower courts:

Instead of seeking to defend the Washington Supreme Court's reliance on *Yakima*, they now ask us to affirm their judgment on an entirely distinct alternative ground. At common law, they say, sovereigns enjoyed no immunity from actions

involving immovable property located in the territory of another sovereign. As our cases have put it, "[a] prince, by acquiring private property in a foreign country, ... may be considered as so far laying down the prince, and assuming the character of a private individual." *Schooner Exchange v McFaddon*, 7 Cranch 116, 145; 3 L Ed 287 (1812). Relying on this line of reasoning, the Lundgrens argue, the Tribe cannot assert sovereign immunity because this suit relates to immovable property located in the State of Washington that the Tribe purchased in the "the character of a private individual."

The Tribe and the federal government disagree. They note that immunity doctrines lifted from other contexts do not always neatly apply to Indian tribes. See *Kiowa Tribe of Okla v Manufacturing Technologies, Inc*, 523 US 751, 756; 118 S Ct 1700; 140 L Ed 2d 981 (1998) ("[T]he immunity possessed by Indian tribes is not coextensive with that of the States"). And since the founding, they say, the political branches rather than judges have held primary responsibility for determining when foreign sovereigns may be sued for their activities in this country. *Verlinden BV v Central Bank of Nigeria,* 461 US 480, 486; 103 S Ct 1962; 76 L Ed 2d 81 (1983); *Ex parte Peru*, 318 US 578, 588; 63 S Ct 793; 87 L Ed 1014 (1943).

We leave it to the Washington Supreme Court to address these arguments in the first instance. Although we have discretion to affirm on any ground supported by the law and the record that will not expand the relief granted below, *Thigpen v Roberts*, 468 US 27, 30; 104 S Ct 2916; 82 L Ed 2d 23 (1984), in this case we think restraint is the best use of discretion. Determining the limits on the sovereign immunity held by Indian tribes is a grave question; the answer will affect all tribes, not just the one before us; and the alternative argument for affirmance did not emerge until late in this case. In fact, it appeared only when the United States filed an amicus brief in this case—after briefing on certiorari, after the Tribe filed its opening brief, and after the Tribe's other amici had their say. This Court has often declined to take a "first view" of questions that make their appearance in this posture, and we think that course the wise one today. *Cutter v Wilkinson*, 544 US 709, 718, n. 7; 125 S Ct 2113; 161 L Ed 2d 1020 (2005).

While I would agree with the concurrence and dissent in *Lundgren* that there are compelling arguments in favor of applying the immovable-property exception to sovereign immunity in cases involving land owned by Indian tribes not on reservation land, I agree with the *Lundgen* majority that this is an issue best squarely addressed by the trial court in the first instance.[3]

---

[3] Indeed, I find it to be good policy in most cases to allow a trial court to have the first opportunity to weigh in on an issue. Moreover, I note that in the morass of litigation that this dispute has produced, there seems to be contradictory conclusions on the applicability of *Lundgren* to this case. This is all the more reason for the issues to be narrowed and to have the trial court make a clear and definitive determination of the applicability of the immovable-property exception to this case before this Court addresses the issue.

Accordingly, I would reach the following result: (1) reverse the trial court's determination that it could not proceed without the United States being joined as a defendant; (2) determine whether the immovable-property exception applies in this case. And then (3), if it determines that the-immovable-property exception is applicable in this case and that defendants do not enjoy sovereign immunity in this case, the trial court should then resolve the quiet title issue as it applies to the named defendants in this case, but leave unanswered the rights and interests of any other person or entity (including the United States).

/s/ Kathleen A. Feeney