**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1518
_____

RICARDO DEVENGOECHEA,
                                                Appellant

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
a foreign state
_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. No. 1-23-mc-00609)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 24, 2024

Before:   JORDAN, McKEE, and AMBJO, *Circuit Judges*

(Filed: July 9, 2024)

_____

OPINION*
_____


McKEE, *Circuit Judge.*

_____

  * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

The facts of the dispute between Plaintiff and Defendant are, in a word, appalling. They have been discussed in detail by other courts.[1] Accordingly, we need only briefly summarize them here.

Defendant, the Bolivarian Republic of Venezuela, deceived Plaintiff into parting with an irreplaceable collection of documents, artifacts and memorabilia once belonging to Simón Bolívar. This collection had passed down in Plaintiff's family for generations. Defendant's agents visited Plaintiff at his home in Florida and convinced him to gather his collection, travel with it to Venezuela, and leave it there so that Defendant could evaluate its authenticity. Defendant promised to either purchase the collection or return it after it had been evaluated, but that promise proved to be illusory. When Plaintiff realized the collection was not going to be returned to him and that he would not be compensated, he sued Defendant in Florida and obtained a judgment for $17 million.

This appeal concerns Plaintiff's attempt to execute his judgment against shares held by one of Defendant's alter egos (the "Shares").[2] The Shares will soon be liquidated in proceedings being administered by the District Court of Delaware. Plaintiff registered his judgment in that court and moved for a writ of attachment. The District Court denied

---

[1] *See, e.g.*, *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1216–19 (11th Cir. 2018).

[2] Specifically, Plaintiff seeks to execute his judgment against a Venezuelan state-owned oil company's shares in a holding company that indirectly owns CITGO Petroleum Corp. We have previously determined that this state-owned oil company is Defendant's alter ego. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 152 (3d Cir. 2019).

2

Plaintiff's motion, concluding that the Shares are immune from attachment for the purpose of satisfying Plaintiff's judgment.

We are as sympathetic to Plaintiff's claim as we are repulsed by Defendant's behavior. Nevertheless, for the reasons that follow, we have no alternative but to affirm the District Court's decision.

## I.[3]

Because the Shares are the property of a foreign state, the Foreign Sovereign Immunities Act ("FSIA") determines the extent to which they can be attached to execute on a judgment.[4] Under the FSIA, a foreign state's property is presumptively immune from attachment unless one of the statute's exceptions is satisfied.[5]

Plaintiff argues that the waiver exception divests the Shares of their immunity from attachment here.[6] Under that exception, a foreign state's property that is "in the United States" and is "used for commercial activity" is no longer immune from attachment once "the foreign state has waived" the immunity "either explicitly or by

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. § 1963. We have appellate jurisdiction under 28 U.S.C. § 1291. When reviewing the adjudication of a petition for attachment or execution under the Foreign Sovereign Immunities Act, we review factual findings for clear error and questions of law de novo. *Crystallex*, 932 F.3d at 136.

[4] *See* 28 U.S.C. §§ 1602–11.

[5] 28 U.S.C. § 1609 (providing attachment immunity to all of a foreign state's property in the United States); 28 U.S.C. § 1610 (identifying circumstances in which attachment immunity is withdrawn); *see also Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007) ("Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies.").

[6] 28 U.S.C. § 1610(a)(1).

implication."[7] It is undisputed that Defendant never *explicitly* waived immunity from attachment. However, Plaintiff argues that Defendant's actions amount to an *implied* waiver in two ways.

First, Plaintiff argues that Defendant's conduct in the United States was "functionally equivalent" to adopting a choice of law clause selecting the application of Florida law, and that such a choice of law clause would, in turn, constitute an implied waiver of attachment immunity.[8] Second, Plaintiff argues that Defendant's conduct in the United States was so egregious that it should be understood as an implied waiver as a matter of public policy and fairness. Unfortunately, both arguments are unavailing.

The first argument relies on the principle that a foreign state impliedly waives its immunity from the jurisdiction of American courts in three circumstances: when it responds to a complaint without asserting immunity, when it expressly agrees to arbitrate disputes in the United States, and when it expressly agrees to a choice of law clause selecting the application of American law.[9] While it is well-settled that these circumstances amount to a waiver of *jurisdictional* immunity under 28 U.S.C. § 1605(a)(1), we have never determined whether they amount to a waiver of *attachment* immunity under 28 U.S.C. § 1610(a)(1). Plaintiff asks us not only to take that step in this case but also to take a step further and conclude that a foreign state can

---

[7] *Id.*

[8] Appellant Br. at 31–32.

[9] *Aldossari ex rel. Aldossari v. Ripp,* 49 F.4th 236, 251 n.23 (3d Cir. 2022).

impliedly waive attachment immunity by merely engaging in conduct that would strongly support the application of American law under ordinary conflict of law principles.

We need not make these jurisprudential leaps, however, because the facts of this case present a more fundamental problem for Plaintiff. Attachment immunity focuses on specific property and requires a property-specific inquiry.[10] Accordingly, we ask not whether the foreign state is entitled to immunity, but whether the property at issue is entitled to immunity.[11] And when a plaintiff relies on the waiver exception to attachment immunity, the plaintiff must come forward with evidence that the foreign state intended to waive the immunity of the specific property plaintiff seeks to attach.[12]

Here, even if Defendant's actions could be construed as an implied waiver of attachment immunity, there is simply no evidence that Defendant intended such a waiver

---

[10] *Crystallex*, 932 F.3d at 149 ("Crystallex must also show that the particular property at issue in the attachment action—the PDVH stock—is not immune from attachment under the Sovereign Immunities Act.").

[11] 28 U.S.C. § 1609 ("*[P]roperty* in the United States of a foreign state shall be immune from attachment") (emphasis added); *id.* § 1610(a) (identifying circumstances in which "*property* . . . shall not be immune") (emphasis added).

[12] *See Aldossari*, 49 F.4th at 250 ("The text of the FSIA does not specify the standard for identifying a waiver, but we join the virtually unanimous precedent from our sister circuits that construes the waiver exception strictly and requires strong evidence – in the form of clear and unambiguous language or conduct – that the foreign state intended to waive its sovereign immunity." (quotation marks and citations omitted)); *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 289 (2d Cir. 2011) ("[A] plaintiff who prevails against the sovereign [on a claim for which the sovereign waived jurisdictional immunity] can generally execute the judgment only upon assets with respect to which the foreign state has waived immunity."); *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 591 (5th Cir. 2006) (reasoning that a district court would have jurisdiction over an "action to garnish [a state-owned company's] working interest share only if the [foreign state] has waived its immunity from execution against [that] working interest").

to reach these Shares. There is absolutely no connection between Defendant's conduct

and the Shares, and none is even argued.[13] In the context of jurisdictional immunity,

when a foreign state expressly agrees to have American law applied to a dispute, we may

naturally infer that the foreign state intended an American court to apply that law and,

therefore, that the foreign state intended to waive its immunity from the jurisdiction of

American courts.[14] But we see nothing in Defendant's interactions with Plaintiff that

would similarly support an inference that Defendant intended to make the Shares

available to attachment by Plaintiff should Defendant's conduct result in a lawsuit.

As for Plaintiff's second argument, although we agree that public policy and

fairness interests (as well as common sense) weigh in Plaintiff's favor, those

considerations are irrelevant to our analysis under the FSIA. The exceptions to immunity

enumerated in the FSIA are comprehensive and exclusive—we have no authority to

---

[13] Rather than identify a connection between Defendant's conduct and the Shares, Plaintiff argues that there need not be a connection because, under the FSIA, *any* waiver should effect a waiver of attachment immunity as to *all* a foreign state's commercial property in the United States. In other words, Plaintiff argues that attachment immunity waivers are an all-or-nothing proposition and that a foreign state may not limit the scope of its waiver.

We cannot accept Plaintiff's interpretation, as it would be inconsistent with the precedents of this and other courts recognizing that the scope of a waiver under the FSIA is delimited by evidence of the foreign state's intent. *See supra* note 12.

[14] *See Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*, 32 F.3d 77, 80–82 (4th Cir. 1994) (reasoning that because the foreign state "made an agreement to look to Virginia law," it would "fl[y] in the face of logic" to infer that the foreign state "expect[ed] to find that guidance in the courts of another country").

recognize exceptions beyond those reflected in the statute.[15] The FSIA does not provide an exception to attachment immunity based on a foreign state's inequitable conduct.[16] Because the FSIA does not invite us to pierce attachment immunity for the purpose of balancing equities or advancing public policy, we simply have no authority to do so.

We recognize that Plaintiff argues that fairness and equity should be considerations *within* the implied waiver exception. But nothing in the text of the FSIA or its legislative history supports such an expansion of the exception. Further, as discussed above, the implied waiver exception turns on evidence of the foreign state's intent.[17] We see no basis to infer from a foreign state's efforts to defraud an individual of his valuables that the foreign state also intended to make its own assets in the victim's home country available for the victim's recompense.

---

[15] *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 141 (2014) ("Congress abated the bedlam in 1976, replacing the old executive-driven, factor-intensive, loosely common-law-based immunity regime with the Foreign Sovereign Immunities Act's 'comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state.' The key word there . . . is *comprehensive*." (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983))); *see also Belhas v. Ya'alon*, 515 F.3d 1279, 1287 (D.C. Cir. 2008) (recognizing that courts are "prohibit[ed]" from "creating new exceptions to the FSIA").

[16] *Cf. Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 718–19 (9th Cir. 1992) (refusing to recognize an exception to jurisdictional immunity for a foreign state's acts of torture because the only FSIA exception to expressly address violations of international law, § 1605(a)(3), is limited to acts that involve the taking of property connected to the United States); *Belhas*, 515 F.3d at 1287 ("[A]lthough 'it is doubtful that any state has ever violated *jus cogens* norms on a scale rivaling that of the Third Reich,' even violations of that magnitude do not create an exception to the FSIA where Congress has created none." (quoting *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994))).

[17] *Ivanenko v. Yanukovich*, 995 F.3d 232, 240 (D.C. Cir. 2021) (reasoning that "the touchstone of the waiver exception" is whether "the foreign state . . . *intended* to waive its sovereign immunity" (citation omitted)).

## II.

We recognize that a right that cannot be enforced through an available remedy is worthless stuff indeed. Yet, given the balance struck by Congress in the FSIA, there will be circumstances in which a plaintiff has a right to relief but no remedy.[18] Regrettably, this is precisely such a circumstance. Accordingly, we must affirm the District Court's orders.

---

[18] *Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 84 (2d Cir. 2014) ("The limitations of [the exceptions to attachment immunity can], in some cases, still render the grant of jurisdiction under the FSIA entirely ineffectual, essentially providing a 'right without a remedy.' The potential for this anomaly was recognized and tolerated by Congress, however, in enacting the FSIA and so cannot bear heavily on our analysis." (citations omitted)); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1128 (9th Cir. 2010) ("Congress fully intended to create rights without remedies, aware that plaintiffs would often have to rely on foreign states to voluntarily comply with U.S. court judgments.").