[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11887

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 29, 2010
JOHN LEY
ACTING CLERK

D.C. Docket No. 08-60630 CV-CMA

EQUITY INVESTMENT PARTNERS, LP,

Plaintiff-Counter-
Defendant-Appellant,

versus

KARIN LENZ,

Defendant-Cross-
Defendant-Appellee,

UNITED STATES OF AMERICA,
Internal Revenue Service,

Defendant-Cross-Claimant-
Counter-Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 29, 2010)

Before WILSON and COX, Circuit Judges, and RESTANI,[*] Judge.

COX, Circuit Judge:

Equity Investment Partners, LP ("Equity") claims to hold a security interest in certain real property owned by Karin Lenz ("Karin"). The Internal Revenue Service ("IRS") placed a lien on the real property due to Karin's and her husband's unpaid tax liabilities. Equity filed an action against Karin and the United States seeking to foreclose its mortgage and to establish the priority of its security interest over the federal tax lien. The IRS counterclaimed to establish the priority of its tax lien. The district court granted the IRS summary judgment establishing that the tax lien was a superior interest. The court held that Equity did not qualify as a "holder of a security interest" under I.R.C. § 6323. Equity appeals. We vacate and remand for further proceedings.

## I. BACKGROUND

Equity is an investment partnership; its majority owners, Stacie Daley ("Daley") and Corbett Lenz ("Corbett") are the children of Karin and her husband Randolph Lenz ("Randolph"). Randolph and Karin suffered financial difficulties as a result of various proceedings brought against them by the Federal Deposit Insurance

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Corporation ("FDIC"). To assist with personal expenses and costs related to the FDIC proceedings, Daley and Corbett loaned their parents over $3 million. The funds were loaned through Equity and several other entities these children owned and controlled. Most of the loaned monies were transferred to Randolph's personal bank account, but they were used for the joint expenses of Randolph and Karin. Some of the loaned monies were transferred directly to a law firm to cover the costs of legal representation in the FDIC proceedings. In addition to the loans, Costa Corporation, another entity owned and controlled by these children, transferred over $8 million to the FDIC as part of a settlement of all claims against Randolph, Karin, Corbett, Daley, and other entities.

Karin held title to certain real property located in Florida. After Daley and Corbett began loaning their parents money through Equity and other entities, Equity entered into a mortgage and security agreement with Karin. The agreement granted Equity a security interest in the real property in exchange for a loan of $1 million. Equity and Karin signed a promissory note, referenced by the mortgage, establishing the terms of the loan. On October 21, 2004, the mortgage was recorded in public records. Equity did not make a contemporaneous payment of $1 million to Karin at the time the mortgage and promissory note were executed. Daley and Corbett assert that the purpose of the mortgage was to secure repayment of the monies they had

3

advanced to their parents as of the time of the mortgage transaction. Approximately ten months later, after the amounts loaned to Karin and Randolph increased to over $3 million and after the FDIC settlement payment, Equity and Karin entered into a mortgage modification agreement. The agreement increased the loan amount secured by the mortgage by an additional $2 million. The promissory note was amended to include the amount of the additional loans and set forth repayment terms. On August 12, 2005, this mortgage modification was recorded in public records. Once again, Equity did not contemporaneously pay Karin the $2 million specified in the agreement.

Daley asserts that it was agreed and understood that when the various family members entered into the settlement agreement with the FDIC, the real property would be used to secure repayment of funds advanced to Randolph and Karin. (R.46 Ex. 13 at 3 ¶ 22.) And, she asserts it was agreed that the mortgage would be issued in Equity's name "as the overall entity entitled to recover repayment of the loans on behalf of the various entities owned and controlled by [Daley] and [Corbett]." (*Id.* at ¶ 23.) Karin testified in a deposition that she does not recall why she signed the mortgage, but in the same deposition she also testified that the purpose of the mortgage modification was "[p]robably so I can pay my children back." (R.43 Ex. 11 at 20.) Karin failed to make any payments on the mortgage debt and was in

4

default within a few months after the mortgage modification agreement was executed. According to Daley, Equity did not immediately foreclose its mortgage because it wanted to afford Karin the opportunity to sell the real property and realize its full value.

The IRS made assessments against Randolph and Karin for unpaid income taxes. It prepared a Notice of Federal Tax Lien on all property and rights to property belonging to Randolph and Karin. The IRS filed the notice in public records on August 16, 2005, after the mortgage and mortgage modification agreements between Equity and Karin had been filed.

## II. PROCEDURAL HISTORY

Equity filed suit in the United States District Court for the Southern District of Florida against Karin and the United States seeking to foreclose its mortgage and establish the priority of its security interest over the tax lien. Karin did not respond to Equity's Complaint, and the Clerk entered her default. *See* Fed. R. Civ. P. 55(a). The IRS answered the Complaint, filed a counterclaim against Equity to establish the priority of its tax lien over Equity's security interest, and filed a crossclaim against Karin seeking to foreclose its tax lien. Equity moved for summary judgment, and the IRS moved for partial summary judgment; both motions sought to establish the priority of their respective interests in the real property. Equity asserted that because

5

the mortgage and mortgage modification were filed before the notice of the tax lien was filed, Equity's security interest takes priority pursuant to I.R.C. § 6323(a). The IRS countered that Equity's mortgage and mortgage modification could not take priority because they did not create a security interest under I.R.C. § 6323. And, even if these mortgages did create a security interest, the IRS argued, the transfer of an interest to Equity was fraudulent and was therefore unenforceable against the tax lien.

The district court concluded that because Equity did not "produce objective evidence that 'money or money's worth' was exchanged for an interest in the Property, the Mortgage Modification does not qualify as a security interest under Section 6323(a), and the IRS tax lien takes priority." (R.67 at 13.) The court also concluded that whether the conveyance was fraudulent is a disputed question of fact which could not be resolved on summary judgment.[1] (*Id.* at 14.) Because it held Equity did not have a security interest under section 6323, it granted the IRS partial summary judgment and denied Equity's motion for summary judgment. (*Id.* at 15).

Equity filed a motion to reconsider based on newly discovered evidence in the form of a loan and security agreement purporting to show that money or money's worth was exchanged for its interest in the real property. The court declined to

---

[1]The district court's conclusion that a genuine issue of material fact precludes resolving on summary judgment whether the conveyance was fraudulent is not challenged on this appeal.

6

consider the evidence and denied Equity's motion because the agreement was in Equity's possession during the discovery period, and Equity did not exercise reasonable diligence to discover and produce the evidence. (R.80 at 7.) The court also explained that, even if it were to consider the evidence, the newly discovered agreement would fail to demonstrate that Equity held a security interest under section 6323(a). (*Id.* at 8.)

After it was granted partial summary judgment, the IRS moved to amend its counterclaim and crossclaim by adding Merrill Lynch Credit Corporation as a defendant because it also has an interest in the real property and was therefore an indispensable party to the case. The court denied the IRS's motion, and the parties stipulated to the dismissal without prejudice of the IRS's counterclaim and crossclaim. The court dismissed these claims without prejudice and entered a final judgment in the case.[2] Equity appeals the grant of partial summary judgment to the

---

[2]Under the *Ryan* rule, we generally hold that voluntary dismissals granted without prejudice and without further condition are not final, appealable judgments. *See Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, 303 (5th Cir. 1978); *See also Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as precedent decisions of the Former Fifth Circuit handed down prior to the close of business on September 30, 1981). The purpose of this rule is to prevent a party from voluntarily dismissing its remaining claims without prejudice after a non-final adverse district court order has been entered in order to manufacture a final judgment. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). We decline to apply the *Ryan* rule in this case because the dismissal without prejudice was not an improper attempt by Equity or the IRS to manufacture a final judgment to pursue an immediate appeal; rather, it was prompted by the district court's refusal to permit the IRS to join an indispensable party. Accordingly, we have jurisdiction to consider this appeal.

IRS, the denial of its motion for summary judgment, and the denial of its motion to reconsider.

## III. ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

The main issue on appeal is whether there exists a disputed issue of material fact that precludes summary judgment establishing the priority of interests in the real property owned by Karin. Equity contends that evidence shows the mortgage and mortgage modification agreements created a security interest in the real property. And, because the agreements were recorded in public records prior to the recording of the tax lien, Equity argues it is entitled to summary judgment establishing the priority of its security interest. The IRS counters that the tax lien is a superior interest because the mortgage and mortgage modification agreements are not security interests. It argues that evidence shows Equity did not part with "money or money's worth" as required for the formation of a security interest under I.R.C. § 6323. Therefore, the IRS argues, summary judgment establishing the priority of the tax lien was appropriate.

Equity also argues that the court abused its discretion in denying its motion for reconsideration. To prevent manifest injustice, Equity contends the court should have reconsidered its judgment in light of a newly discovered loan and security agreement purporting to show that it parted with "money or money's worth" in exchange for the

mortgage and mortgage modification agreement. The IRS counters that the court properly declined to consider the newly discovered document because it was in Equity's possession throughout the discovery period, and Equity failed to exercise due diligence to produce it.

## IV. STANDARD OF REVIEW

We consider de novo a grant or denial of summary judgment. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008).

We review the denial of a motion for reconsideration for abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007).

## V. DISCUSSION

If a person accrues a federal tax liability, a lien is created by operation of law "in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." I.R.C. § 6321. That lien arises at the time the assessment is made and continues until the tax liability is satisfied or becomes unenforceable by reason of lapse of time. *Id*. § 6322. A lien is not valid, however, "against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" until notice has been filed. *Id.* § 6323(a). This means that "any 'security interest' which arises prior to the proper filing of a federal tax lien takes priority over the tax lien." *Litton Indus. Automation Sys., Inc. v. Nationwide Power*

9

*Corp.*, 106 F.3d 366, 368 (11th Cir. 1997) (citation omitted). In the case of real property, notice of the tax lien must be filed "in one office within the State . . . as designated by the laws of such State, in which the property subject to the lien is situated . . . ." I.R.C. § 6323(f)(1)(A)(i).

Equity claims it holds a security interest in the real property that is superior to the tax lien. It is undisputed that the mortgage and mortgage modification were properly recorded prior to the filing of the notice of tax lien. So, if the mortgage and mortgage modification satisfy the requirements of I.R.C. § 6323 to create a security interest, that interest has priority over the tax lien.

The Internal Revenue Code defines a security interest as "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability." I.R.C. § 6323(h)(1). To be protected under section 6323(a), a holder of a security interest must show (1) the security interest was acquired by contract to secure payment or performance of an obligation or indemnify against loss; (2) the property to which the security interest was to attach existed at the time of filing of the tax lien; (3) at the time the tax lien was filed, the security interest was protected under state law against a judgment lien arising out of an unsecured obligation; and (4) the holder of the security interest parted with "money or money's worth." *In re Haas,* 31 F.3d 1081, 1085 (11th Cir.

10

1994) (citing I.R.C. § 6323(h)(1)). The parties agree that the first three requirements are met. The disputed issue is whether Equity parted with "money or money's worth."

At the time the mortgage and mortgage modification were executed, Karin did not receive contemporaneous payments in the amounts noted in the agreements. Equity claims that the notes and mortgages were issued to secure the debts owed by Karin and Randolph to Equity and other entities. It argues that it parted with "money or money's worth" as defined by the Internal Revenue Code and Treasury Regulations because the mortgages were given to secure antecedent debts.

The IRS counters with two arguments. First, it contends that in order to prove it parted with "money or money's worth," Equity must present evidence that at the time monies were advanced to Karin and Randolph, the parties agreed that, at some future date, they would execute an agreement to secure the loans. It claims Equity has not presented such evidence. Second, it contends Equity has not presented sufficient evidence to show that at the time the mortgages were executed, the parties intended for the mortgages to secure the antecedent debts. According to the IRS, the only evidence Equity offers to show the purpose of the mortgages is "self-serving" statements that are unsupported and insufficient to satisfy Equity's burden of proof.

11

The district court observed that Equity did not produce any "*objective evidence* demonstrating that either the Mortgage or the Mortgage Modification was intended to satisfy [the] antecedent debts." (R.67 at 10) (emphasis added). It explained that neither the mortgage documents nor the promissory notes refer to the loans Daley and Corbett advanced to their parents through Equity and other entities, and it noted there was no other documentation to support Equity's contention that the mortgage and mortgage modification were issued to secure repayment of the loans. The court acknowledged that Daley and Randolph asserted in affidavits and depositions that the family members agreed that the purpose of the mortgage and mortgage modification was to repay the loans. (*Id.* at 5.) Nevertheless, it reasoned Equity "failed to produce anything more than circumstantial evidence" that the agreements were intended to secure the antecedent debts. (*Id.* at 11.) Because "Equity failed to explicitly outline this consideration in [the mortgage documents], and [it failed] to produce any other *objective evidence* demonstrating the parties' agreement," (*id.* at 12) (emphasis added), the court concluded Equity did not present sufficient evidence to show that it had parted with "money or money's worth." Therefore, the court held, Equity did not hold a security interest as defined by I.R.C. § 6323(h)(1), and the IRS was entitled to partial summary judgment establishing the priority of the tax lien.

Treasury regulations define "money or money's worth" as including money, a security, tangible or intangible property, services, and other consideration reducible to a money value. 26 C.F.R. § 301.6323(h)-1(a)(3). It also includes "any consideration which otherwise would constitute money or money's worth . . . which was parted with before the security interest would otherwise exist if, under local law, past consideration is sufficient to support an agreement giving rise to a security interest." *Id.* Under Florida law, the local law in this case, past consideration is sufficient to support the creation of a security interest. Fla. Stat. § 673.3031(1)(c) (providing that an instrument is issued for value if "issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due"); *see also Lea v. Suhl*, 417 So. 2d 1179, 1181 (Fla. App. 1982) (issuance of a note in payment of an antecedent obligation rendered additional consideration unnecessary).

Federal law determines the priority of competing liens asserted against a taxpayer's property. *Aquilino v. United States*, 363 U.S. 509, 513-14, 80 S. Ct. 1277, 1280 (1960). And, for Equity's interest in the property to have priority, Equity must show it is the holder of a security interest as defined by the Internal Revenue Code and Treasury Regulations. But, because the Regulations direct us to apply state law to determine whether past consideration may satisfy the "money or money's worth"

13

requirement, Florida law controls this issue. Past consideration may support the creation of a security interest under Florida law. So, Equity may prove it parted with money or money's worth by showing that at the time the mortgage and mortgage modification were executed, both Karin and Equity agreed that the purpose of the agreements was to secure repayment of the loans.[3]

The IRS seems to contend that Equity must present evidence of "contemporaneous consideration"—that is, at the time the loans were originally given, the parties agreed that Equity would receive a security interest at some future date. (Appellee's Br. at 28.) We disagree. Equity need not show that the parties contemplated future execution of a security agreement at the time the loans were issued. Rather, to show past consideration, Equity must present evidence that the security agreement was executed for the purpose of repaying the loans. The IRS cites no authority holding or suggesting that Florida law demands contemporaneous consideration, and we are aware of none. Indeed, comments to the Florida statute defining consideration suggest otherwise. These comments imply that a note or security interest given to satisfy an antecedent debt is supported by consideration

_____

[3]Even if evidence shows that Randolph was the sole party responsible for the antecedent debts because many of the loans were made directly to him, the notes and mortgages would still be supported by valid consideration under Florida law if Karin agreed that the purpose of the mortgage and mortgage modification were to secure Randolph's antecedent debts. *See* Fla. Stat. § 673.3031 cmt. 4 (noting subsection (1)(c) "is intended to apply to an instrument given in payment of or as security for the debt of a third person . . . .").

14

even if, at the time the debt arose, the parties did not contemplate future issuance of a note or security agreement. Fla. Stat. § 673.3031 cmt. 1 (providing as an example of past consideration, "X owes Y $1,000. The debt is not represented by a note. Later X issues a note to Y for the debt.").

Summary judgment is appropriately granted where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). It should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Here, both the IRS and Equity moved for summary judgment, but a disputed issue of a material fact precludes its grant to either party.

At dispute is whether the mortgage and mortgage modification were executed to secure repayment of the debts owed to Equity by Randolph and Karin. Randolph stated in an affidavit that "[i]t was understood and agreed at the time the loans were made that my wife would agree to place a Mortgage on the Property to provide security for the loans that were being made." (R.46 Ex. 14 at 3 ¶ 17.) Karin testified in her deposition that she did not remember why she signed the mortgage, but she also testified that she signed the mortgage modification "[p]robably so I can pay my

15

children back." (R.43 Ex. 11 at 20.) Daley stated in an affidavit that at the time of the FDIC settlement, "it was agreed and understood that the Property would be utilized to secure repayment of the funds being advanced on behalf of [Randolph] and [Karin]." (R.46 Ex. 13 at 3 ¶ 22.) Her affidavit also claims the parties executed a participation agreement "giving [Equity] the right to collect the loan proceeds and to obtain the mortgages for the loans made by our various entities." (*Id.* at ¶ 24.)

These statements could suffice to establish the purpose of the mortgage and mortgage modification. While the statements may be "self-serving" and may not be "objective evidence," they are evidence nonetheless. If believed, they would support a finding that the mortgages were given to satisfy the antecedent debts. This finding would lead the court to hold that the mortgages were supported by past consideration and that Equity parted with "money or money's worth." The truth of these statements, however, is disputed. At trial, Equity will have the burden of proof on this element of its claim.

Without determining the credibility of these statements, there remains a genuine issue of material fact that precludes summary judgment for either party—whether the mortgage and mortgage modification were executed to secure repayment of the loans. And, it is not appropriate to assess credibility on summary

16

judgment. *See, e.g., United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Having concluded the court erred in granting the IRS summary judgment establishing the priority of the tax lien, we need not consider whether the court abused its discretion in denying Equity's motion to reconsider. We reverse the grant of partial summary judgment in favor of the IRS, affirm the denial of Equity's motion for summary judgment, and remand for further proceedings not inconsistent with this opinion.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**