[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12877
_____

D.C. Docket No. 8:13-cv-02404-MSS-TBM

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

F. GORDON SPOOR,
as the Personal Representative
of the Estate of Louise P. Gallagher,
as the Trustee of the Louise Paxton
Gallagher Revocable Trust,

Defendant - Appellee,


PAXTON MEDIA GROUP, LLC,

Intervenor - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 4, 2016)

Before MARCUS and WILLIAM PRYOR, Circuit Judges, and LAWSON,*
District Judge.

MARCUS, Circuit Judge:

In this tax case, the United States appeals the district court's determination

that commissions claimed by Defendant F. Gordon Spoor as personal

representative of the Louise P. Gallagher Estate and as trustee of the Louise Paxton

Gallagher Revocable Trust have priority over a special deferred estate tax lien on

property designated by agreement under I.R.C. § 6324A.  Our review, aided by

oral argument, of the text and structure of § 6324A leads us to the opposite

conclusion.  We agree with the United States that special estate tax liens on

property designated by § 6324A, unlike estate tax liens on the gross estate pursuant

to § 6324, are not subject to an executor's claims for administrative expenses.  We

also hold that Spoor's administrative expenses do not take priority over income tax

liens imposed pursuant to § 6321.

**I.**

The basic facts are not in dispute.  On October 17, 1989, Louise Paxton

Gallagher created the Louise P. Gallagher Revocable Trust ("Trust").  When

Gallagher died on July 5, 2004, the Trust contained 3,970 membership units (later

redenominated as 39,700 units) in Paxton Media Group, LLC ("Paxton"), a

---

* Honorable Roger H. Lawson, Jr., United States District Judge for the Middle District of
Georgia, sitting by designation.

2

privately held and family-owned newspaper publishing company.  Defendant F. Gordon Spoor is the personal representative of Gallagher's estate as well as the trustee of the Trust.

On September 30, 2005, Spoor filed a Form 706 federal estate tax return on behalf of the Estate.  The tax return valued the Estate at $36,624,546, of which $34,936,000 reflected the Paxton membership units held in the Trust.  The return reported a federal estate tax liability of $15,524,223.  Spoor claimed a $1,086,265 deduction for his personal representative fee for administering the Estate.  The IRS challenged the valuation of the Paxton units, and the Estate filed a petition in Tax Court to contest the deficiency determination.  The Tax Court valued the Paxton units at $35,761,760, and assessed an additional estate tax liability and failure to pay penalties totaling $401,743.89.

On its estate tax return the Estate elected to defer and pay its estate tax liability in ten equal installments, pursuant to I.R.C. § 6166.[1]  The Estate made tax payments totaling $3,007,364.83 in 2005, and a payment of $687.70 in March 2006. The Estate made additional payments of between $1.7 million and $1.8 million each in April of 2006, 2007, and 2008.  In August 2010, the Estate agreed to the creation of a special deferred estate tax lien on the Paxton units pursuant to § 6324A.  The IRS recorded notice of the lien in the public records of McCracken

---

[1] Unless noted otherwise, all statutory citations are to the Internal Revenue Code.

3

County, Kentucky, on September 3, 2010.  By 2012 the value of the Paxton units had become less than the unpaid portion of the deferred tax and interest, and the IRS demanded additional collateral from the Estate.  When the Estate was unable to provide additional collateral within 90 days, the IRS accelerated the remaining deferred tax obligations.  As of September 10, 2013, the remaining estate tax, penalties, and interest totaled $10,483,006.47.  Because the Estate also failed to pay its reported income taxes, as of September 2013 the Estate owed an additional $551,106.39 in income tax, penalties, and interest.  Pursuant to § 6321, the failure to pay income tax liabilities resulted in federal tax liens attaching to the Estate beginning on September 20, 2010.

On September 17, 2013, the United States filed a complaint in the United States District Court for the Middle District of Florida against the Estate and Trust to foreclose the designated property lien under § 6324A and the income tax liens.[2]  Spoor did not dispute the validity or amount of the IRS liens, and on September 26, 2014, the district court granted summary judgment in favor of the United States on its right to foreclose its tax liens on the Paxton units.  Spoor filed a cross-motion for summary judgment, asserting that his claim to administrative expenses took priority over the government's liens.  At the time of summary judgment, Spoor had

---

[2] Paxton intervened to protect its corporate interests, such as its subchapter-S corporate status, in the event of a foreclosure sale of the Trust's membership units.

4

paid himself $600,000 of his $1,086,265 claim, leaving $486,265 yet to be paid. According to Spoor, the value of Paxton units owned by the Estate had fallen to approximately $2 million. Because the estate taxes take priority over the unpaid income taxes, and the Estate's assets are insufficient to cover both the estate taxes and Spoor's commissions, the key question is whether estate taxes take priority over Spoor's commissions.

The district court entered summary judgment in favor of Spoor. The court held that § 6324A is "silent as to the priority of claims which arise prior to a federal tax lien." To resolve the question, the court relied on the common-law principle that "the first in time is the first in right." Because Spoor's administrative expense claim, as filed with the Form 706 tax return in 2005, arose prior to the tax liens that were recorded and assessed in September 2010, the court concluded that Spoor's claim had priority. The court further held that this result was supported by public policy considerations, because estates might not be administered if personal representatives were not confident that they would be compensated for their efforts. The United States timely appealed this adverse portion of the court's order.

## II.

We review a district court's grant of summary judgment de novo. See Boim v. Fulton Cty. Sch. Dist., 494 F.3d 978, 982 (11th Cir. 2007). "The court shall

5

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Clemons v. Dougherty Cty., 684 F.2d 1365, 1368 (11th Cir. 1982).

The priority of federal tax liens against competing claims is governed by federal law. Aquilino v. United States, 363 U.S. 509, 513-14 (1960); Equity Inv. Partners, LP v. Lenz, 594 F.3d 1338, 1344 (11th Cir. 2010). "Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" United States v. McDermott, 507 U.S. 447, 449 (1993) (quoting United States v. New Britain, 347 U.S. 81, 85 (1954)).

## III.

### A.

We begin with an overview of the relevant tax lien statutes. Generally, when a taxpayer fails to pay a tax, that amount, plus interest and penalties, becomes a lien in favor of the United States upon all property belonging to the taxpayer. § 6321. The lien arises at the time the tax assessment is made. § 6322. Until the lien is recorded, it does not have priority against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. § 6323(a). Once

6

the lien is recorded, it may still be primed by various other claims enumerated in § 6323(b), such as by certain purchasers who do not have actual notice or knowledge of the lien. § 6323(b)(1)(A).

Liens for estate taxes operate slightly differently. Under § 6324, the estate tax lien arises automatically from the date of death, and attaches to the gross estate, "except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration . . . shall be divested of such lien." § 6324(a)(1). The estate tax lien is not valid against a mechanic's lienor or any of the interests that prime general tax liens listed in § 6323(b). § 6324(c)(1).

An alternative to this gross estate tax lien is available if more than 35 percent of the value of the adjusted gross estate is attributable to an interest in a closely held business. § 6166(a)(1). Then, the executor may elect to pay the tax in up to ten equal installments, with the first payment due up to five years from the payment due date that would otherwise apply. Id.; § 6166(a)(3). The deferred amount of estate tax, plus any interest, penalties, and costs, becomes a lien in favor of the United States. § 6324A(a). As collateral, the executor may identify "section 6166 lien property" in lieu of the § 6324 gross estate lien after receiving written consent from each person having an interest in the designated property. § 6324A(a), (c), (d)(4). The maximum value of the property which the United States may require as § 6166 lien property shall not be greater than the deferred

7

amount and required interest, taking into account any encumbrance on the property such as a lien on farm property. § 6324A(b)(2). Until the special lien is recorded, it is not valid against any purchaser, holder of a security interest, mechanic's lien, or judgment lien creditor. § 6324A(d)(1). Even after the special lien is recorded, it is not valid against certain other interests including real property tax and special assessment liens. § 6324A(d)(3).

If the value of the property designated by the agreement ever becomes less than the unpaid portion of the deferred tax and interest amount, the government may require that additional property be added to the agreement, although in no case may the value of the designated property exceed the unpaid portion of the tax liability. § 6324A(d)(5). If property is not provided within 90 days to satisfy the liability, such failure accelerates payment obligations of the deferred portion. Id.

**B.**

1.

Spoor argues that we should apply the common law "first in time is first in right" principle because federal law does not provide otherwise. Under that approach, Spoor contends that his claim for commissions takes priority over the government's special estate tax lien because his commissions claim arose before the lien was recorded. As we see it, however, the text and structure of § 6324A do not permit an executor's administrative expenses to prime a § 6324A estate tax

lien.  Additionally, although § 6324A does not mention administrative expenses and some decisions of the U.S. Supreme Court suggest that the common law principle applies when a statute is silent, we need not decide whether Spoor would prevail under the common law principle. Spoor's claim for commissions is not a lien and therefore is not governed by the principle.

"Context is a primary determinant of meaning."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012).  When interpreting a statute, we may discover the meaning of one section by reading it in context with surrounding sections.  Id.  As Sir Edward Coke explained in 1628, "[I]t is the most natural and genuine exposition of a statute to construe one part of the statute by another part of the same statute, for that best expresseth the meaning of the makers."  1 Edward Coke, The First Part of the Institutes of the Laws of England, or a Commentary upon Littleton § 728, at 381a (1628; 14th ed. 1791), as quoted in Scalia & Garner, Reading Law at 167.  Thus, we begin our inquiry by comparing the two sections governing estate tax liens, and we notice a stark difference.  Namely, the special property lien -- unlike the gross estate lien -- does not exclude amounts related to administrative expenses from the lien.  While § 6324 provides that the estate tax "shall be a lien upon the gross estate . . . except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration," § 6324(a)(1), § 6324A simply states that

the deferred estate tax "shall be a lien in favor of the United States on the section 6166 lien property," § 6324A(a).

In deciding not to repeat § 6324's exclusion for administrative expenses in § 6324A, Congress refused to give priority to administrative expenses on special liens.  "A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."  Hamdan v. Rumsfeld, 548 U.S. 557, 578 (2006); see also Keene Corp. v. United States, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting Russello v. United States, 464 U.S. 16, 23 (1983))).  Because Congress excluded administrative expenses from one type of estate tax lien but not the other type, a fair reading suggests the statute does not give administrative expenses priority over special property liens.  Thus, the United States' special property lien on the Paxton units should not be subject to Spoor's claim for administrative expenses.

Second, we can draw a similar inference from the priorities and exclusions listed in § 6324A.  The plain language of § 6324A does not contain an exception for administrative expenses, despite clearly listing a number of other exceptions.

10

Section 6324A provides that four types of interests take precedence over a

§ 6324A lien if they arise before the lien is recorded: purchasers, security interests,

mechanic's liens, and judgment liens. § 6324A(d)(1). The statute also lists three

types of interests that take precedence over a § 6324A lien even if they arise after

the lien is recorded: real property tax and special assessment liens, mechanic's

liens for the repair or improvement of real property, and interests arising from real

property construction of improvement financing agreements. § 6324A(d)(3). The

three "superpriorities" listed in § 6324A are more selective than the eleven

interests that can prime a recorded § 6324 lien. §§ 6324(c), 6323(b). Moreover,

these "superpriorities" only come into play when the government permits them

because an executor cannot designate encumbered property to satisfy a special lien

unless the government agrees. § 6324A(c). The seven delineated categories of

interests that may take priority over a § 6324A lien conspicuously do not include

an executor's interest in administrative expenses. "The canon of statutory

construction that the inclusion of one implies the exclusion of others is well-

established." United States v. Koonce, 991 F.2d 693, 698 (11th Cir. 1993); accord

Scalia & Garner, Reading Law at 107. "When Congress provides exceptions in a

statute," the proper inference "is that Congress considered the issue of exceptions

and, in the end, limited the statute to the ones set forth." United States v. Johnson,

529 U.S. 53, 58 (2000). Notably, § 6324A does not simply parrot or adopt the

11

priorities and exceptions of § 6324. Rather, Congress considered which interests should take priority over a § 6324A lien and decided on a narrower list than the interests that take priority over a § 6324 lien. As relevant here, Congress did not include an exception for administrative expenses, and we, therefore, do not create such a priority by implication.

Third, we note the difference in how the two types of estate tax liens may arise. A § 6324 lien is imposed automatically by law from the date of the decedent's death. § 6324(a)(1). A § 6324A lien, in contrast, arises only if the executor elects to defer taxes under § 6166 and each person with an interest in the property designated by the executor consents in writing pursuant to § 6324A(c). The express allowance for the exclusion of administrative expenses is thus appropriate for the § 6324 lien upon the gross estate because that lien attaches automatically to all of the estate's assets that might be used to pay the executor's expenses. The special § 6324A lien, on the other hand, attaches only to property chosen by the executor if the executor chooses to defer estate tax payments. The discretion and control provided to the executor under § 6324A allows the executor to allocate other estate property to fund administrative expenses. Congress did not need to exclude certain property from the § 6324A lien because, unlike with the § 6324 lien, the executor himself can seek to ensure the § 6324A lien does not attach to property necessary to pay his expenses and commissions.

Fourth, the two types of estate tax liens arise at different periods of the administration of the estate.  A § 6324 lien arises from the date of death, whereas a § 6324A lien arises "at the time the executor is discharged from liability under section 2204 (or, if earlier, at the time notice is filed)."  §§ 6324(a)(1), 6324A(d)(2).  Here, the estate did not elect to designate a § 6324A lien until 2010, six years after Gallagher had died.  Additionally, the agreement identifying the § 6166 lien property must designate a responsible person to pay the deferred estate tax payments and communicate with the IRS as necessary.  § 6324A(c)(2).  Thus, while the § 6324 lien will arise before the executor has administered the estate, the § 6324A lien will not arise until the executor has been discharged or has no further duties regarding the special lien property.  This means that § 6324A provides the executor an opportunity to designate property for his own expenses before consenting to a designated property lien.  This textual construction defeats Spoor's argument that an alternative interpretation is needed to assure executors that they will be compensated for their efforts.  The purpose of the two statutes, as expressed in the text, is plainly to provide the executor with a special opportunity to defer certain tax payments and designate property of his choice for a special lien.  The presence of such an additional opportunity is unlikely to deter an executor from administering an estate -- if he does not desire the creation of special lien, then he is not compelled to designate one.  Moreover, the executor's power to choose

13

which property will be subject to the § 6324A lien enables him to organize the estate so that other assets are reserved to pay his personal commissions. If the executor neglects to set aside assets for these and other administrative expenses, nothing in § 6324A permits him to then offset those expenses against the property that he specially designated to secure a § 6324A lien. The voluntary nature of this lien ensures that estates will continue to be administered even if § 6324A is enforced as written.

Fifth, reading § 6324's exception for administrative expenses into § 6324A would undermine § 6324A by rendering the estate's tax liability permanently undersecured. We favor an interpretation that furthers the manifest purpose of a statute so long as the interpretation is textually permissible. Scalia & Garner, Reading Law at 63. While the lien provided under § 6324 is imposed on the gross estate, the § 6324A lien applies only to designated property, the value of which is strictly limited:

> (2) Maximum value of required property.
> The maximum value of the property which the Secretary may require as section 6166 lien property with respect to any estate shall be a value which is not greater than the sum of --
>
> > (A) the deferred amount, and
> > (B) the required interest amount.
>
> For purposes of the preceding sentence, the value of any property shall be determined as of the date prescribed by section 6151(a) for payment of the tax imposed by

14

> chapter 11 and shall be determined by taking into account any encumbrance such as a lien under section 6324B [Special lien for additional estate tax attributable to farm, etc., valuation.].

§ 6324A(b)(2). Federal regulations require that the designated property lien agreement list "all encumbrances on the property, including mortgages and any lien under section 6324B." 26 C.F.R. § 301.6324A-1(b)(1)(iv).[3] Because § 6324A caps the value of property that can be designated as lien property at the amount owed to the IRS, if the executor could also use this property to pay his own commissions, then the estate's tax liability would never be fully secured. Under § 6166, the executor may postpone the first installment payment for five years, and thereafter pay in annual installments over the course of a decade. § 6166(a). In return for permitting this deferral, the United States reasonably requires full collateral.

Not only is the government forbidden from accepting collateral in excess of the value of the estate's tax liability, but neither may the estate permit the value of the collateral to fall below the owed sum. The statute provides:

> If at any time the value of the property covered by the agreement is less than the unpaid portion of the deferred amount and the required interest amount, the Secretary may require the addition of property to the agreement (but he may not require under this paragraph that the

---

[3] Spoor did not list his personal commissions as an encumbrance on the special lien property.

15

value of the property covered by the agreement exceed such unpaid portion).

§ 6324A(d)(5).  Thus, it is apparent from the text of the statute that the value of the property designated as lien property will precisely track the value of the tax obligation owed by the estate.  Allowing the executor to pay himself with the designated property would defeat this clear textual purpose.

Sixth and finally, we note that a § 6324A lien may substitute for the bond that otherwise may be required under § 6165 to secure deferred tax liabilities. § 6324A(d)(6).  Generally, the government may require a bond of up to double the amount of the tax liability when an extension of time to pay has been granted. § 6165.  That § 6324A permits a special lien capped at the amount of the tax liability in lieu of a larger bond further suggests that the special lien provision does not imply a priority exception for administrative expenses.  Just as taxpayers may not reduce the bond required under § 6165 to pay personal commissions, neither may they deduct such commissions from the § 6324A lien that they may elect in place of a bond.  Together, these six considerations lead us to the conclusion that the statute does not permit an executor to pay his own commissions from property designated as § 6324A lien property.

## 2.

Spoor argues that because the statute does not mention administrative expenses, his claim for commissions has priority under the common law principle

16

of "the first in time is the first in right." We disagree. Spoor cites two Supreme Court cases for the first-in-time principle. First, in United States v. City of New Britain, 347 U.S. 81 (1954), the Court had to determine whether federal tax liens on a property took priority over competing municipal liens. Id. at 82. In an earlier version of § 6323, federal law provided that an unrecorded federal lien is not valid as against "any mortgagee, pledgee, purchaser, or judgment creditor," but the law said nothing about municipal liens. Id. at 87 n.10. The Court concluded that the first-in-time principle governs where federal law has not otherwise created "a schedule of priority." Id. at 85–86. "[A]s to any funds in excess of the amount necessary to pay the mortgage and judgment creditors," the Court said, "Congress intended to assert the federal lien." Id. at 88. "There is nothing in the language of [§ 6323] to show that Congress intended antecedent federal taxes to rank behind any but the specific categories of interests set out therein." Id. The Court remanded to the state court to re-determine the order of priority of the various liens encumbering the property. Second, in United States v. McDermott, 507 U.S. 447 (1993), the Court adjudicated the competing priorities of a federal tax lien and a private creditor's judgment lien. Id. at 448. After reciting that "[a]bsent provision to the contrary, priority . . . is governed by the common-law principle that the first in time is the first in right," id. at 449 (internal quotation marks omitted), the Court held that the federal lien had priority over a judgment lien because the federal lien

17

was filed before the property was acquired and the judgment lien did not become perfected until the property was acquired, id. at 450–53.

Although the first-in-time principle applies when a federal tax lien competes for priority with other liens and the federal statute does not allocate priority, the principle does not govern this appeal because Spoor's claim for commissions is not a lien. A lien is often defined as "[a] charge or security or incumbrance upon property." Permanent Mission of India to the United Nations v. City of New York, 551 U.S. 193, 198 (2007) (quoting *Lien*, Black's Law Dictionary (4th ed. 1951)); see also Fla. Stat. § 727.103(11) ("'Lien' means a charge against or an interest in property to secure payment of a debt or performance of an obligation . . . ."). Although Florida statutes grant Spoor a right to remuneration, they stop short of creating a lien: "A personal representative shall be entitled to a commission payable from the estate assets without court order as compensation for ordinary services," Fla. Stat. § 733.617(1), and "a trustee is entitled to be reimbursed out of the trust property . . . for reasonable expenses," id. § 736.0709(1). Neither statute grants a security interest in property. Yet Florida law expressly provides for liens in circumstances not applicable here, which supports our reading that the right to a commission does not create a lien. Id. § 736.0709(2) ("An advance by the trustee of money for the protection of the trust gives rise to a lien against trust property to secure reimbursement with reasonable interest."). Because Spoor does not have a

18

lien on the property, the common law rule that "first in time is first in right" does not apply. Accordingly, the federal lien on the property designated under § 6324A takes priority over Spoor's claim for commissions.

## C.

Because the Paxton units are of insufficient value to satisfy the estate tax liability, it is of little moment whether Spoor's claim for commissions or the government's § 6321 income tax lien would be next in line for payment. But if the fortunes of the newspaper industry turn by the time the Paxton units are liquidated, we agree with the United States that the income tax lien takes priority over the Estate's administrative expenses.

We reach this conclusion for many of the same reasons we determined that Congress granted priority to § 6324A liens. As with the exceptions and priorities relevant to the special estate lien codified at § 6324A(d)(1) and (3), we read the exceptions and priorities listed in § 6323(a) and (b) as controlling—at least where the moving party does not have a perfected lien. Congress carefully enumerated which interests take priority over an unrecorded tax lien, and which take priority over certain recorded liens. Notably, unlike the general § 6324 estate tax lien on the gross estate, Congress did not except property from the lien to pay personal commissions.

19

Additionally, the common law rule that the "first in time is the first in right" does not apply here because Spoor's claim is not a lien.  We agree that the first-in-time principle applies when a federal tax lien competes for priority with other liens and Congress has not allocated priority.  We decline, however, to grant priority to other interests, such as an executor's commissions.

IRS regulations provide:

> Federal law controls in situations in which a federal tax lien competes with any interest under state law or by contract.  However, the Service may in its discretion not assert priority of its federal tax lien over reasonable administrative expenses of the estate, to the extent that such expenses are not covered by an insurance policy, trust or other similar benefit that covers the cost of administrative expenses of the estate.  State statutes may limit the amount of reasonable administrative expenses permitted to be paid during probate.

I.R.M. 5.5.2.4(3) (emphasis in original).  Here, the IRS has chosen to assert the priority of its federal tax lien over the administrative expenses of the estate.  As we see it, Congress has permitted it to do so.  Accordingly, we reverse the order below and remand for proceedings not inconsistent with this opinion.

**REVERSED.**